IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETER IN, )
)
      Plaintiff )    Case No. 1:19-cv-00224
)
    v. )
)
DANIEL STROUP, )    RICHARD A. LANZILLO
)    UNITED STATES MAGISTRATE JUDGE
      Defendant )
)    MEMORANDUM OPINION AND
)    ORDER ON DEFENDANTS' MOTION
)    TO DISMISS
)
)    [ECF NO. 20]

      Plaintiff Peter In (In), an inmate in the custody of the Pennsylvania Department of Corrections, commenced this action pursuant to 42 U.S.C. § 1983 against Defendant Daniel Stroup (Stroup), a physician assistant employed at State Correctional Institution at Albion (SCI-Albion). In's pro se Complaint alleges that Stroup acted with deliberate indifference to his medical needs in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. ECF No. 8., p. 1. In has sued Stroup in "his individual and official capacities." *Id.* Stroup has moved to dismiss In's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and filed a brief in support of the motion. ECF Nos. 20, 21. In filed both a response and a brief in opposition to Stroup's motion. ECF Nos. 32, 33. Stroup filed a reply brief. ECF No. 35. Thus, the motion is fully briefed and ripe for disposition. For the reasons set forth below, Stroup's motion will be granted in part and denied in part.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. *See* ECF Nos. 9, 31.

1

I.      Factual Allegations

For purposes of Stroup's motion to dismiss, the Court accepts as true the following factual allegations contained in In's Complaint. *See US Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). In 2014, In began to experience the "visible appearance of small bumps[,] excessive in nature[,] appearing on the genital region of his scrotum that caused him discomfort[,] frequent and unbearable itchiness[,] and constant inflammation." ECF No. 8, ¶¶ 14-15 (internal quotation marks and punctuation omitted).[2] Although In's Complaint does not state whether the symptoms were occasional or persistent, it does aver that they "caus[ed] Plaintiff suffering in all his daily function and activity since condition appeared and for him to seek medical attention, treatment and care." ECF No. 8, ¶ 14. The symptoms also caused In's "mental condition to suffer and deteriorate." *Id.*, ¶ 39.

Eight months after the symptoms began, unnamed prison medical providers diagnosed In's condition as Fordyce spots.[3] *Id.*, ¶ 18. Various treatments were available, but none were prescribed or provided at the time. *Id.*, ¶¶ 21-22. Two years after In first sought treatment, he was prescribed Calamine paste "[n]ot by Stroup[,] [b]ut by a different [p]hys[ician] [a]ss[istant] who saw [In] on one of his sick-calls." *Id.*, ¶¶ 27–31. When he complained that Calamine was too thick and pasty, making it difficult to wash off, an unnamed person gave him Rasimine instead. *Id.*, ¶ 32. Unhappy with this treatment, In sought a referral to an outside specialist. *Id.*, ¶ 36. At that time, Stroup had not provided In with any of the different prescriptions or treatments he had requested. *Id.* ¶¶ 42–44.

During a sick call on October 18, 2018, In told an unnamed physician assistant (not Stroup) that he still needed treatment for his Fordyce spots. *Id.*, ¶ 46. He explained that "he'd disagreed

---

[2] In routinely underlines, bolds, and fully capitalizes words. For clarity, these are excluded from all quotations, unless otherwise noted.

with [Stroup] about the diagnosis being benign because sanitary concerns involving confinement within prison environment." *Id.*, ¶ 53.  He was still suffering "physically as well as mentally and emotionally." *Id.*, ¶ 60.  The unnamed physician assistant examined him and said "it doesn't look like Fordyce Spots" ... "I'm not exactly sure what it is." *Id.*, ¶ 58.  The unnamed physician assistant said he would make a note that In wanted a referral to a specialist. *Id.*, ¶ 61.  In filed a grievance four days later on October 22, 2018, based upon the physician assistant's inability to determine the nature of his condition. *Id.*, ¶ 62.

"[D]ays later," Stroup saw In for a follow-up appointment and told him, "there's nothing for you to be sent to be seen by an outside specialist for ... that I know of ... [I]t would be wasting money that the department doesn't need to waste and that the department doesn't have to waste ... so your request to do so is denied." *Id.*, ¶¶ 64–68.  Immediately afterwards, In saw an unnamed medical department doctor and explained his situation.  In, the doctor, and Stroup then discussed his condition, after which the doctor scheduled an appointment for In to see a dermatologist in two or three weeks. *Id.*, ¶¶ 70–75.  Days later in the medical department, an unnamed person told In that instead of physically seeing the specialist offsite, pictures would be taken of his condition and sent to the specialist, after which they would meet by teleconference. *Id.*, ¶ 76.  "A week or so later, [In] met with the Dermatologist" by teleconference. *Id.*, ¶ 77.  The dermatologist ordered a biopsy to which In consented. *Id.*, ¶¶ 78–80.  When In saw Stroup a week later, Stroup refused to conduct a biopsy even though he was qualified to do so because "in my personal opinion, that's just too

---

[3] In refers to his condition Fordyce spots. Fordyce spots are "a condition marked by the presence of numerous small, yellowish-white bodies or granules on the inner surface and vermilion border of the lips; histologically the lesions are ectopic sebaceous glands." *Fordyce Spots*, 841200, Stedman's Medical Dictionary (Westlaw, last updated Nov. 2014). "On physical examination, Fordyce spots appear as 1-3 mm, non-tender, pale, white, or yellow papules that are more visible with stretching of the skin. When there are many in number, they can appear as confluent patches on the skin. ... [T]hese lesions are benign. ... Treatment consists of reassurance to the patient. Some patients may be uncomfortable with the appearance of Fordyce spots and may seek treatment for cosmetic purposes." *Fordyce Spots*, AMERICAN OSTEOPATHIC COLLEGE OF DERMATOLOGY, https://www.aocd.org/page/FordyceSpots (last visited Sept. 21, 2019).

much work that would have to be done" for his condition; he would not be sent to get the biopsy elsewhere because "that's not actually required for what you have" and "because quite frankly it would be a waste of our department's time and expenditures." *Id.*, ¶¶ 81–83. Stroup reiterated that "there's nothing else that we can do for you, for your condition that will help that we haven't tried," referring to previous prescriptions for Calamine and Rasimine. *Id.*, ¶¶ 84–85.

As alternate treatment, In wants "creams and gel[s] that contain Tretinon" or other common treatments for Fordyce spots. *Id.*, ¶ 86. Stroup has been "refusing, denying, delaying and interfering" with his treatment for "well over 5 years." *Id.*, ¶ 90. In requests monetary damages and an injunction to compel Stroup to provide new treatments. *Id.*, ¶¶ 108–09.

II.     In's Prior Lawsuit and His Current Complaint

In alleges that he has "submitted his claim trough [sic] the Administrative Grievance System and has exhausted all avenues of appeal before filing this lawsuit action in compliance to 42 U.S.C. section 1997 (e)(a)." ECF No. 8, ¶ 13. In filed a previous lawsuit in this Court based on many of the same facts he alleges in this action. In's prior lawsuit was commenced on August 26, 2015 and docketed at No. 1:15-cv-00160-SPB. That case was dismissed with prejudice.[4] ECF No. 8, ¶¶11–13. The defendants to the previous lawsuit included Daniel Stroup. ECF No. 8, ¶ 12. Then-United States Magistrate Judge Susan P. Baxter (now U.S. District Judge) dismissed In's claims for failure to exhaust administrative remedies available to him within the prison grievance system as required by the Prison Litigation Reform Act of 1965 (PLRA), 42 U.S.C. § 1997. ECF No. 20-2, pp. 8-9. In's

---

[4] Pursuant to Fed. R. Evid. 201, the Court has taken judicial notice of In's prior lawsuit and the Orders entered therein. These matters are "not subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Such matters of public record are appropriate for judicial notice. *See, e.g., Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 722 (3d Cir. 2013); *United States v. Hoffert*, 2018 WL 4828628, at *1 (W.D. Pa. Oct. 4, 2018) ("[A] court may take judicial notice of relevant prior court orders, including orders in other cases.") (citing *Mina v. United States Dist. Court for E. Dist. of Penn.*, 710 Fed. Appx. 515, 517 n. 3 (3d Cir. 2017)).

4

complaint in his 2015 action raised Stroup's allegedly improper treatment of the Fordyce spots and skin condition from 2014 [*see* ECF No. 8, ¶¶ 14–45], which he realleges in this lawsuit, stating that he "has actioned the matters again in the herein filing." ECF No. 8, ¶ 45.

But In is precluded from re-raising any claims from his previous case here. Contrary to his assertion, his prior claims against Stroup were not dismissed "without prejudice." *See* ECF No. 8, ¶ 12. Instead, the Court dismissed In's claims against Stroup for a failure to exhaust. *See* Case No. 1:15-cv-00160, ECF No. 83. The Court determined: "it is apparent that Plaintiff failed to exhaust his administrative remedies in accordance with the PLRA's requirements, and is now procedurally defaulted from doing so." Case No. 1:15-cv-00160, ECF No. 82, p. 9. Although the Court did not expressly specify it, that dismissal was with prejudice because In could not have cured the default. *See, e.g., Rodriguez Ramos v. Smith*, 2005 WL 3054291, at *7 (E.D. Pa. Nov. 14, 2005*), aff'd sub nom. Ramos v. Smith*, 187 Fed. Appx. 152 (3d Cir. 2006) (citing *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004) (holding a complaint was dismissed with prejudice because plaintiff's failure to exhaust administrative remedies cannot be cured; thus administrative remedies were no longer available)). In's prior case against Stroup was dismissed on March 17, 2017. Case No. 1:15-cv-00160, ECF No. 83.

Thus, In's allegations of actionable behavior in this Complaint are limited to those that occurred after March 17, 2017. The Complaint does not categorize the alleged constitutional violations into counts. Instead, In alleges general deliberate indifference to his serious medical needs "lapsing well over five years." *Id.*, ¶ 90. But as the Court has indicated, any claims dating that far back have been dismissed with prejudice and are not actionable herein. As discussed below, In does raise an actionable Eighth Amendment deliberate indifference claim based on Stroup's alleged refusal to conduct the biopsy as ordered, claiming that Stroup unconstitutionally denied him

5

treatment for a non-medical reason. *Id.*, ¶¶ 92-93. In also raises a deliberate indifference claim against Stroup for failure to prescribe Tretinon or another medication to him since their meeting in October of 2018. ECF No. 8, ¶ 85. These claims are the sole focus of the Court's opinion; Stroup has moved for their dismissal.[5]

III.       Standards of Review

A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, l F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits;

---

[5] Stroup also seeks dismissal of this claim based on In's failure to exhaust his administrative remedies. *See* ECF No. 21, p. 11. However, Stroup acknowledges that he "is in the process of subpoenaing the remainder of the Plaintiff's grievance file from the Department of Corrections, which may further demonstrate the failure to exhaust these requirements." *Id.* Stroup's reply brief did not include In's remaining grievance file either. ECF No. 35. Thus, it is premature to raise the exhaustion defense. Stroup, of course, may raise the defense of failure to exhaust in a summary judgment motion.

Furthermore, the statute of limitations bars claims that accrued before January 9, 2017. Here, Stroup raises this defense in a motion to dismiss rather than in an answer. ECF No. 21, pp. 15–17. "A complaint is subject to dismissal on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Williams v. Correct Care Solutions*, 2017 WL 3401455, at *4 (M.D. Pa. Aug. 8, 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Claims brought pursuant to 42 U.S.C. § 1983 are subject to the most analogous state statute of limitations, which, in Pennsylvania, is the two-year statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996) (citing 42 Pa. C.S. § 5524). *See also Wallace v. Kato*, 549 U.S. 384 (2007) (for § 1983 claims, "the length of the statute of limitations … is that which the State provides for personal-injury torts.") (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *Sameric Corp. of Delaware. Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995). "The determination of the time at which a claim accrues is an objective inquiry," concerned with "what a reasonable person should have known." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Here, the statute of limitations defense is apparent on the face of the complaint as to conduct that was the subject of In's previous lawsuit on June 26, 2015, the allegations of which In restates in his current Complaint. ECF No. 20-2, p. 1. It is then plain that In "knew or should have known of the injury upon which [his] action is based," *see Sameric*, 142 F.3d at 599, by at least June 26, 2015, for the injuries he alleges prior to the filing of that lawsuit.

This does not end the inquiry, however. The statute of limitations for § 1983 actions is tolled while the prisoner exhausts the administrative remedies available to him because such exhaustion is mandatory under the PLRA. *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017) (citing *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015)). Here, In began the grievance process in 2014 and his only grievance appeal (#532178) was dismissed January 9, 2015. *See* ECF No. 20-2, p. 9. Thus, the applicable two-year statute of limitations, *see Williams*, 2017 WL 3401455, at *4 (citing 42 Pa. C.S. § 5524), began to run on January 9, 2015 and ended January 9, 2017. Therefore, the statute of limitations would bar any of In's claims which precede January 9, 2017.

rather, the plaintiff must only present factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in the light most favorable to the plaintiff. *US Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'

7

> Finally, 'where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for
> relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212,221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629

F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than

formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can

reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so

despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence

construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364

(1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by

a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. US.*

*District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir.

1991).

8

II.   Analysis

    A. In's Complaint states a plausible Eighth Amendment claim based upon Stroup's alleged denial of the recommended biopsy.[6]

       1.   Elements of an Eighth Amendment "deliberate indifference" claim

In his Complaint, In asserts that Stroup violated the Eighth Amendment's prohibition against cruel and unusual punishment by showing deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To plead a violation of his constitutional right to adequate medical care, a plaintiff must allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A medical need is considered "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth Cty. Correctional Instit. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). This is not an objective test of intent; instead, deliberate indifference means that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail to state constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of

---

[6] In's Complaint states that he is suing Stroup "in his individual and official capacities." ECF No. 8, p. 1. To the extent that Stroup is sued in his "official capacity," his claims for monetary relief are barred by the Eleventh Amendment, which proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir.1981) (Pennsylvania); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity). The Department of Corrections (DOC), which administers SCI-Albion as an agency of the Commonwealth of Pennsylvania, and its agents and employees are entitled to Eleventh Amendment immunity, *see Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019). Stroup is an employee of SCI-Albion; therefore, In's claims for monetary relief against Stroup in his official capacity are dismissed with prejudice. To the extent In seeks injunctive or declaratory relief, Eleventh Amendment immunity does not apply and In may proceed against Stroup in both his individual and official capacities. *Laskaris*, 661 F.2d at 26.

medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

That said, as the Court of Appeals has made clear, the fact that prison medical personnel have provided some medical care to an inmate does not preclude a finding of deliberate indifference:

> [T]here are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "an easier and less efficacious treatment" of the inmate's condition. *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). Nor may "prison authorities deny reasonable requests for medical treatment ... [when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).

*Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

2.      The facts alleged in the Complaint minimally support a "serious medical need."

Stroup argues that In's allegations do not support that he suffered from a serious medical need. Although In's Complaint describes his symptoms, it never definitively identifies the medical condition that caused them. The Complaint acknowledges that medical personnel at SCI-Albion initially diagnosed his condition as Fordyce spots, but it goes on to allege that another physician assistant told In that this diagnosis was incorrect and that he was unable to determine the nature of the condition. Further, the Complaint also alleges that a dermatologist opined that a biopsy was needed to evaluate the condition. In asserts that the condition caused him to experience discomfort, frequent and unbearable itching and constant inflammation. Given these factual allegations and

giving In the benefit of all reasonable inference that may be drawn from these allegations, the Court

finds that the Complaint meets the threshold for pleading a serious medical need. At this early stage

of the proceedings and based upon the Complaint alone, the Court cannot say as a matter of law

that In's condition did not represent a serious medical need.

It is true that courts in the Third Circuit have found skin conditions similar to In's did not

represent an objectively serious medical need. *See, e.g., Tsakonas v. Cicchi*, 308 Fed. Appx. 628, 632 (3d

Cir. 2009) (skin conditions including eczema on the feet, seborrhea on the scalp, and athlete's foot

are not serious medical needs for the Eighth Amendment); *Malles v. Lehigh City*, 639 F. Supp. 2d 566,

577 (E.D. Pa. 2009) (skin rash and bed bug bites not objectively serious). These cases, however,

were decided on motions for summary judgment where the court had the benefit of a record

sufficient to evaluate whether the condition at issue was sufficiently serious to implicate the Eighth

Amendment.[7] Here, the Court is evaluating In's claim based upon the allegations of his Complaint

alone. Those allegations minimally support the existence of a serious medical need.

> 3. In's allegation that Stroup refused to perform the biopsy ordered by the
> dermatologist adequately supports an inference of deliberate indiifference.

The Complaint alleges facts adequate to support an inference of deliberate indifference by

Stroup based on his refusal to proceed with the biopsy recommended by the dermatologist. Stroup

notes that the Complaint acknowledges that he provided In with medical care, including multiple

examinations. The Complaint also acknowledges that a different, unnamed physician assistant

prescribed Calamine lotion to treat In's itchiness (ECF No. 8, ¶¶ 27–31), and that when In

complained that the Calamine lotion was too pasty and did not wash off easily, he was prescribed

---

[7] In the rare cases where courts have rejected such a claim on a Rule 12(b)(6) motion, the non-serious nature of the plaintiff's skin condition was evident either from his own allegations or the contents of medical records he attached as exhibits to his complaint. *See e.g., Hughes v. Miskell*, 2011 WL 7561387, at *10 (M.D. Pa. Jan. 10, 2011) ("Based on the Exhibits submitted by Plaintiff and PHS Defendants, we find that Plaintiff's skin rash and bed bug bites did not constitute serious medical needs.").

Rasimine lotion instead. *Id.*, ¶ 32. Although the Complaint alleges that Stroup initially refused to send In to a specialist (*Id.*, ¶¶ 64–68), Stroup and an unnamed doctor at SCI-Albion ultimately agreed to refer In to a dermatologist. *Id.*, ¶¶ 70–75.

The Complaint also alleges, however, that the dermatologist who reviewed photographs of In's condition opined that a biopsy of the condition was necessary but that Stroup refused to perform the biopsy or schedule it with another provider. According to the Complaint, Stroup refused the biopsy because he believed it would be a waste of time and resources. *Id.*, ¶¶ 81–83. This allegation allows for conflicting inferences. On the one hand, one reasonable inference could be that Stroup concluded that the biopsy was medically unnecessary. This would represent the exercise of Stroup's "professional judgment" and, thus, belie a finding of deliberate indifference. *Gindraw*, 967 F. Supp. at 836 (citation omitted). As noted, Eighth Amendment jurisprudence is well-established that "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer*, 991 F.2d at 67 (citations omitted), and that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery*, 2018 WL 3521212, at *5. On the other hand, one could plausibly infer from the facts alleged in the Complaint that Stroup denied the biopsy based on cost or other non-medical reasons. Such an inference could support a finding of deliberate indifference. *Palakovic*, 854 F.3d at 228.

In *McCluskey v. Vincent*, 505 Fed. Appx. 199 (3d Cir. 2012), the Third Circuit Court of Appeals addressed a claim arising from an inmate's dissatisfaction with the defendants' treatment of his skin condition. When the plaintiff prisoner broke out in an itchy rash and "experienced severe pain," he received treatment over the course of nine months. *Id.* at 199. As his rash spread, he received various diagnoses and treatments from several doctors. He later developed an ulcer on his foot, so doctors removed part of his heel. After that, he developed lesions on his abdomen, thighs,

13

and legs. At this point, he was diagnosed with Methicillin-resistant Staphylococcus aureus (MRSA) and received medication. He later developed boils and abscesses. He received continual treatment and was transferred to a hospital a couple of times for surgeries and operations. He argued that the defendants were deliberately indifferent to his MRSA "by failing to diagnosis [sic] it for several months, including refusing his request for a biopsy and failing to order a dermatology consult." *Id.* at 203. Prior to this, he was diagnosed with "various other skin conditions" and treated with creams, ointments, or medications. The court stated that when a plaintiff "complains his doctors should have ordered a biopsy or dermatology consultation sooner, 'the question whether … additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,' and 'does not represent cruel and unusual punishment.'" *McCluskey v. Vincent*, 505 Fed. Appx. 199, 203 (3d Cir. 2012) (quoting *Estelle*, 429 U.S. at 106). "At best," such situation "presented evidence of a misdiagnosis and possible medical malpractice, and this is insufficient." *Id.* at 203 (citing *Rouse*, 182 F.3d at 197). *See also Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). The court additionally rejected the claim that his constitutional rights were violated by persisting in an ineffective course of treatment when there was "no evidence that the Medical Defendants' diagnoses were incorrect or that their prescribed treatments were unreasonable or medically unsound." *McCluskey*, 505 Fed. Appx. at 203.

*McCluskey*, however, involved an appeal from the district court's grant of summary judgment based upon a record that included the plaintiff's medical records. The record demonstrated that the defendants consistently provided the plaintiff with care and exercised their medical judgment regarding that care. Although the plaintiff complained that "his doctors should have ordered a biopsy or dermatology consultation sooner," this was "a classic example of a matter for 'medical judgment,'" and 'does not represent cruel and unusual punishment.'" *Id.* (quoting *Estelle*, 429 U.S. at

14

106); *see also Hughes v. Miskell*, 2011 WL 7561387, at \*10-11 (M.D. Pa. Jan. 10, 2011) (even though plaintiff denied consultation with outside dermatologist that he wanted for a rash and bed bug bites, granting motion to dismiss deliberate indifference claim when defendants ordered blood work and treated him with steroid shot, creams and lotions).

Unlike in *McCluskey*, the Court does not have the benefit of a record to evaluate whether Stroup's decision not to perform a biopsy was an exercise of medical judgment or was motivated by non-medical considerations. In's allegation that Stroup refused to perform or authorize a biopsy despite the direction or recommendation of a dermatologist is enough to state an Eighth Amendment violation and survive a motion to dismiss.

> B.   In fails to allege deliberate indifference regarding his request for prescription of different medication.

In argues that the Calamine and Rasimine medicines he has already been prescribed were insufficient to treat his condition and that, since Stroup met with him in October of 2018, Stroup has shown deliberate indifference by refusing to provide him with different medications, including "creams and gel that contain Tretinon." ECF No. 8, ¶ 109. In this case, there is no question that In received "some level of medical care" from Stroup. *Hensley*, 2018 WL 4233021, at \*3. Although In requested different medication or treatment, including creams with Tretinon, Stroup advised In in late 2018 "there's no medication that I have to prescribe to you for that. ... [T]here's nothing else that we can do for you, for your condition that will help that we haven't tried," referring to the previously prescribed Calamine and Rasimine. ECF No. 8, ¶ 85 (internal quotations and punctuation omitted). It is well-settled that an inmate's objection to the type of medication provided by prison physicians is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. *Tillery*, 2018 WL 3521212, at \*5. These claims routinely arise and are frequently rejected. *See, e.g., Whooten v. Bussanich*,

15

248 Fed. Appx. 324, 326-27 (3d Cir. 2007) (upholding grant of summary judgment that medical staff was not deliberately indifferent for treating migraine headaches with other medicines and only occasionally with the plaintiff's preferred drug); *Ascenzi v. Diaz*, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (upholding grant of motion to dismiss for failure to state a claim, finding no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs); *Castro v. Kastora*, 2018 WL 4538454, at *6 (E.D. Pa. Sept. 20, 2018) (granting motion to dismiss for failure to state a claim of deliberate indifference when medical staff prescribed Ibuprofen and Tylenol instead of Oxycodone or other narcotics; "[t]he medical staff did not withhold pain medication [but] merely exercised their medical judgment in providing [plaintiff] with a different medication than what he wanted."); *Crowe v. Maxa*, 2019 WL 4101236 (W.D. Pa. Aug. 29, 2019) (granting motion to dismiss for failure to state a claim of deliberate indifference when doctor rejected plaintiff's request for a specific medication and instead prescribed different medication and treatment plan instead). In's preference for Tretinon over the prescribed medications is the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. *Tillery*, 2018 WL 3521212, at *5. Considering the wide latitude that medical professionals have in prescribing medications, In does not state a plausible claim for deliberate indifference based on Stroup's refusal to prescribe alternative medications. Therefore, this claim will be dismissed with prejudice.

  C. The Complaint fails to state a claim under the Fourteenth Amendment.

  In's Complaint also asserts that Stroup violated his rights under the Fourteenth Amendment. ECF Nos. 8, ¶¶ 8, 96, 104–06. This claim is based on the same conduct as In's Eighth Amendment claim and fails as a matter of law. The Supreme Court has held, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due

process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266 (1994)

(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Eighth Amendment provides the explicit

source of constitutional protection against deliberate indifference to serious medical needs. *See*

*Estelle,*429 U.S. 97 . Thus, the Eighth Amendment subsumes In's Fourteenth Amendment claim. *See*

*Sadelmyer v. Peltzer*, 2013 WL 4766517, at *6 (W.D. Pa. Sept. 4, 2013) (holding that in prisoner's §

1983 claim, where the same conduct was alleged to violate both the Eighth and Fourteenth

Amendments, the former subsumed the latter); *see also Ramos v. Prime Care Medical*, 2019 WL 6839943

(E.D. Pa. Dec. 13, 2019) (same). Because In's Fourteenth Amendment claim fails as a matter of law,

it is hereby dismissed with prejudice.

V.      Conclusion

For the foregoing reasons, the Court will DENY Stroup's motion to dismiss as to In's

Eighth Amendment deliberate indifference claim, but only to the extent that claim is based on

actionable conduct that occurred on or after March 17, 2017. The Court will GRANT Stroup's

motion as to (1) In's Eighth Amendment claim to the extent it is based on conduct before March 17,

2017; (2) In's Eighth Amendment claim to the extent it is based on Stroup's declining to prescribe

alternative medications; (3) In's Fourteenth Amendment claim; and (4) In's claims against Stroup in

his official capacity. An appropriate order follows.

ORDER

Upon review, and for the reasons stated in the accompanying Memorandum Opinion, the

Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 20] is hereby GRANTED IN

PART and DENIED IN PART. The motion GRANTED as to the following claims, which are

hereby DISMISSED with prejudice: (1) In's Eighth Amendment claim to the extent it is based on

conduct before March 17, 2017; (2) In's Eighth Amendment claim to the extent it is based on

17

Stroup's declining to prescribe alternative medications; (3) In's Fourteenth Amendment claim; and (4) In's claims against Stroup in his official capacity. The motion is DENIED as to Plaintiff's remaining Eighth Amendment deliberate indifference claim which shall proceed to the next stage of the litigation.

Entered and Ordered this 30th day of September, 2020.

RICHARD A. LANZILLO
United States Magistrate Judge

18